Good morning, Your Honors. Laura Kathleen Sutton for Petitioner Appellant Dana Kennedy, and I have reserved two minutes for rebuttal. In this Michigan murder case, there was no physical evidence linking Mr. Kennedy to the murder. No fingerprints, no DNA, no videotapes of the incident, no weapon found on Mr. Kennedy in his possession, and he made no confessions or incriminating statements to the police. But there was an eyewitness, right? I'm getting to that. Mr. Kennedy's conviction was largely based on the eyewitness testimony of DeAndre Humphrey, that there was a single shooter, who he identified as Mr. Kennedy, firing a single weapon, and a jailhouse informant who has since recanted his testimony. Now, apart from Mr. Humphrey, there were other witnesses at the scene who testified they did not see the shooter, and these witnesses comprised the bulk of the state's case. As to possible motive, yet their objectivity is questionable. As the respondent stated in its answer, these individuals were closely connected by family, friendship, or involvement in drug transactions within the neighborhood. Now, balanced against the fact that the bulk of the state's witnesses were involved in the drug trade was the prosecutor's theory that Mr. Kennedy, too, was involved in the drug trade and had been involved in an alleged unrelated arson, and that the theory of this crime was presumably so that Mr. Kennedy could get back at people, he could maintain control of the drug trade in the neighborhood. Now, I've made these comments to place the issues in context. This case was not a slam dunk for the state. The shooting took place at a street corner known for drug sales. The state's witnesses and the defendant had been painted to the jury as associated in one way or another with drug trafficking. In this case, DeAndre Humphrey's sole eyewitness testimony that there was one shooter firing multiple shots with one gun was the basis for this prosecution. Now, this jury had to decide whether to believe an unsavory defendant or a collection of unsavory defense witnesses, and the introduction of an impartial, unimpeached expert witness who provided testimony that bolstered that of the sole eyewitness to the shooting. This tilted the balance in this case. Now, as to the Brady violation, the constitutional protection here is the due process right to disclosure of evidence material to guilt, innocence, or punishment, and obviously the case law precedent here is the long-established case of Brady v. Maryland and its well-established test that the evidence be suppressed, the evidence was favorable or material to guilt or punishment. We don't know that the prosecution suppressed any evidence, do we? Pardon? We don't know that the prosecution suppressed any evidence, do we? Because it wasn't revealed until after the case was over. You're talking about the number of casings that matched. Correct. Understood. That's the respondent's argument, that they had lack of knowledge. And they claimed in their brief that they had no knowledge of the falsity of the testimony at trial because it was generated by the Detroit Police Crime Lab. Well, Supreme Court precedent disagrees with that because in Kiles v. Whitley, the court said the prosecution has a duty to disclose favorable evidence and it's not limited to actual knowledge by the prosecution. It extends to evidence in the... I thought that the evidence didn't even exist at the time of trial. It did exist. And that's misleading. That argument that it did exist, it didn't exist at the time of trial is misleading. It existed. It was in the possession of the police department. The testing that was done on these evidence was false and misleading. It was retested later and found to be that the evidence presented to the jury in this case is true, that the ballistics all came from one gun, was false. The police had these casings at the time of trial. The retesting that showed more than one gun came after the trial, right? It did come after the trial. So, there can't be a Brady violation on the part of the prosecutor for withholding something that doesn't exist. Nor can there be false testimony presented if he didn't know he was presenting anything that was false. So, I don't know how you get... I mean, you're in a newly discovered evidence category, not in the category you're seeking to be in, it seems to me. Well, our argument is that it did exist. The bullet casings did exist at the time of trial and they were tested by the Detroit Crime Lab and a false report was generated and it was testified to as true to the jury. The evidence existed. It wasn't newly discovered. They bricked the same evidence to the Michigan State Police Crime Lab. They tested the same casings and came up with a vastly different result. Well, not too much of a different result. They just said four of them weren't... Five. Five casings were different. But there was a whole bunch of them that were the same, right? About 14 or something like that. Correct. Correct. Is this analogous to a situation where a policeman doesn't give evidence to the prosecutor and therefore it's withheld because the prosecutor never gets a chance to give it to the jury? Is that what you're arguing? Well, our argument is that the Brady violation extends to the entire state prosecution team and that included the Detroit Police Department and the Detroit Crime Lab. That would be absolutely true if the evidence, which is the ballistics report, had existed at the time of trial, but it didn't exist at the time of trial. No, a false report existed saying that all casings came from the same gun. Well, I don't know. I mean, you can say an incorrect report. I mean, don't you think that all these tests and all these things that are testified to in court are sometimes wrong? Of course they are. I mean, human error is prevalent in everything. But in this particular case, the testimony of the eyewitness, DeAndre Humphrey, was the sole... I mean, that was the basis that there was one gun and one shooter, Mr. Kennedy. And the ballistics... This case wasn't a slam dunk for the prosecution, as I stated earlier. The ballistics evidence was the sole impartial testimony that was given to the jury about the shooting. And it's not unreasonable to believe that given the rather unsavory character of the witnesses, this evidence carried great weight with the jury, and that was certainly argued by the prosecutor. You should listen. The ballistics testimony supported DeAndre Humphrey. Well, what this Royster said, he heard more than 20 continuous shots fired, right? So there could have been two shooters out of that. But that wasn't argued. It was argued one gun, one shooter. Well, I know that, but they could have easily said, well, it must be two or three. There were bound to be two if all those casings came from the same time. Well, the theory at trial was one gun, one shooter, multiple shots fired. We're talking about an AK-47 here, so there are multiple casings, allegedly. Now, I'd like to talk about the third part of the Brady test, which is materiality or prejudice. And the respondent dismisses the new ballistics evidence as immaterial and states in their answer that the streets of Detroit are likely to be strewn with bullet casings. Now, had this ballistics evidence been accurately tested and the prosecutor confronted with two types of shell casings, this trial would have been different, since the state's theory of one man, one shooter would have been unavailable due to their own ballistics testing. Now, it's reasonable to assume, too, that any competent defense attorney would have had a field day attacking a prosecutor who argued to a Detroit jury, as the respondent did in his brief, that gunfire was so common in Detroit that spent casings on the streets are a common feature. Now, the state trial court found the evidence not material in light of Mr. Kennedy's alibi defense, which this finding misses the point. There's nothing inherently contradictory about an alibi defense and a defense that impeaches the only eyewitness's testimony. And certainly, defense counsel could have used this impeachment evidence to call into question the witness's testimony. An attorney can still assert an alibi defense and attack a key witness's account of how the crime took place. Now, materiality asks the question, if the jury had known of the evidence, could it have affected the jury's verdict sufficient to undermine the confidence in the verdict? Now, absent the testimony of DeAndre Humphrey, there was no case. There would not have even been an arrest in this case. As DeAndre Humphrey was key to the state's case, this ballistics evidence that contradicted this already unsavory witness in the eyes of the jury would not have been, as the respondent asserted in his brief, of marginal utility. Now, this evidence was material, and false testimony that supported the only eyewitness to the shooting could have undermined the state's theory and consequently undermines confidence in the verdict. All these casings came from the same caliber weapon, right? Well, they said there were five casings that came from a different gun and 14 cases that came from... They look pretty much alike when you just pick them up, right? I'm not a ballistics expert, Your Honor, but... Well, they're just casings. Right. Look at a casing. They're casings. There was no gun recovered in this case at all. The casings could have been fired from a similar weapon. It's true. But some of those other people saw... The retesting indicated that the casings came from two distinct weapons. Well, but they were the same caliber, same size, same brass, right? They had to be. Otherwise, the counsel would have looked at them in the first case and said, well, they couldn't have come from the same weapon, because one was a .50 caliber and one was a .30 caliber. That wasn't true. They were all the same caliber and all the same casing. There may have been two shooters out of that car, and the second one never was seen. That's a theory, but that wasn't presented to the jury. Now, there was... I want to briefly touch on the fact that the trial court found the evidence was merely impeaching and not exculpatory and did not warrant a new trial. Now, they cited Michigan case law for that finding, People v. Kress, but this finding is contrary to clear statements by the Supreme Court that impeachment evidence can constitute a Brady violation. And I'm citing Gigola v. United States, and in a more recent case of Smith v. Cain, the court reversed the denial of post-conviction relief by the state where there was suppressed evidence and the only purported eyewitness to the murder was lying to the jury. Now, the respondent also argues that there was nothing to prevent Mr. Kennedy's attorney from presenting his own evidence to contradict the false report. This statement also contradicts Supreme Court precedent in Banks v. Dredke, which stated a rule thus declaring that the prosecutor must hide and the defendant must seek is not tenable in a system constitutionally bound to accord defendants due process. I'd like to spend a couple of moments on our self-representation claim, and I want to start out by saying that the request was not equivocal. On the first day of trial, Mr. Kennedy told the trial judge, Your Honor, I'd like to exercise my Sixth Amendment right and go pro se, and the trial court's response was equally unequivocal. I'm denying it. No, I'm denying your opportunity to represent yourself. And when asked by Mr. Kennedy why the request was denied, the court simply stated it's not in your best interest, Mr. Kennedy. Furthermore, there was no inquiry into any potential waiver. Mr. Kennedy was not complaining that the trial court failed to follow some particular methodology in this, but federal law does require some type of inquiry into the voluntariness of the waiver. And here, there was no inquiry, just the court's subjective belief that it was a bad idea. While the request to proceed pro se may have been a bad idea, it was a right belonging to Mr. Kennedy and not to the trial court. Not appealed on direct appeal, though? This issue was not raised on direct appeal, that is correct. It was raised, and we have cited ineffective assistance of appellate counsel as cause for that. But you have to show prejudice for that kind of a claim, right? You are referring to the supplemental information that the respondent has provided the court, the recent case of Jones v. Bell, and I see I'm out of time, but do you want me to respond to that? Yes. Okay. I'm not necessarily referring to that case. I'm referring to the doctrine. Okay. Well, Mr. Kennedy's case... The point is to answer Judge Rogers' question as succinctly but fully as you can. I will try to, Your Honor. I will try to. We believe that with regard to the supplemental citation, that Jones' failure was found in context to be untimely and that that circumstance was not present in this case. And the denial in this case does not mention timeliness, and especially where the trial court is willing to... So you don't have to show prejudice or you have shown prejudice? This case is on collateral appeal, and we believe that I'd like to say something about the right to self-representation. Just so that we're clear, because we only have a few moments, are you saying that there's no prejudice or that you have prejudice? We believe that there is prejudice because this issue was plain. You're saying even if prejudice is required, you show prejudice? We have shown prejudice because counsel ignored this obvious issue on direct appeal. There was no question of timeliness, as in the Jones case, and it was an obvious error that could have resulted. Don't you have to show, once you have to show prejudice, don't you have to show some prejudice from not having him represent himself, which seems like it would be hard to show? It would be very impossible to show that, and that's what the court in... If it's impossible to show, then how can you argue that you've shown it? That's what the court in United States v. Gonzales-Lopez said when it called the right to have a counsel of choice separate and disregard and did not use the Strickland standards in that particular case, because it would be impossible to quantify the impact of the violation. You can't. You showed different kind of prejudice, not Strickland prejudice. Pardon? You showed different kind of prejudice under the rule, not Strickland prejudice. Correct, correct. Thank you. Anything else? All right, Ms. Sherman. Good morning, Your Honors. May it please the Court. Michigan Assistant Solicitor General Anne Sherman here on behalf of Respondent Apple Lee, Thomas Mackey. I want to point out at the onset that the standard for collateral review for habeas relief is not whether this trial was a slam dunk for the state. Addressing the brainy alleged constitutional violation, you're correct, Your Honor, that this evidence was not, this report from the Detroit Crime Lab, was not available until a good five years after Kennedy was convicted. Not available or not prepared? Well, the report was not issued and available until five years after, but even the audit and investigation of the Crime Lab in general did not begin until two years after he was convicted. So to say that somehow we agree that the state can't suppress, even inadvertently, but it didn't have anything to not divulge. It just didn't exist. And with respect to the alleged false evidence, there's no way you can call this testimony of David Potch from the Crime Lab false. He believed he testified in good faith. He didn't know he'd made an error. And the state didn't allow him to get up on the stand and lie and let him lie and not correct it. It was, as you suggested, Your Honor, it was a mistake. What caused the Crime Lab to retest these anyway? That seems strange. Years after, a number of years after Kennedy's conviction, it began to come to light that there was an unacceptable error rating. And so two years, approximately two years after Kennedy's conviction, there was an audit and investigation, and they chose a number of cases. Now, Ms. Sutton suggests that they chose this case because, of course, it would have made a difference and satisfied the habeas standard, but they didn't look at the entire case to see what had occurred. It was a capital case, and likely they chose this case to retest because it was a capital case and ballistics had been involved. Of course, serious cases, they wouldn't do it on a small one because the person's already out, I guess. What was the nature of these errors in general? Were these ways to get more convictions, or was it just sloppiness? Do you understand what I'm asking? Yes. My understanding, and it's not from the record in this case, but it's from doing a little bit of just Googling about the Crime Lab issues, is that it was just sloppy, incompetent work, mistakes, mistakes. And it was the same kind of mistake that David Potch made when he got up on the stand and believed he was telling the truth, but he wasn't. I understand that. I'm just concerned about whether if you had, speaking hypothetically, let me just construct something. I know some of my colleagues don't like that, but you can. What if you had a person in the Crime Lab who tested something and said to himself, oh, this is going to cause the person to get off, to be acquitted. I'm going to change it to I'm going to close one eye and say, oh, and change the facts because I know that's more likely that the police, whom I work for ultimately, will get a conviction. That would be, if that was done in bad faith, that would be a, you know, you could sue him for that under our precedence. You would think that would be a Brady violation. I think that's a key distinction, Your Honor, because, for example. It's still a way of reading the facts. It's a scientist reading the indentations on the striations on the weapons, let's hypothesize. Why isn't that a Brady violation? Well, I think your hypothetical has a key distinction here, which is that there was some intentionality there. There is no clearly. That's required when you're talking about a policeman as opposed to when you're talking about. Because the prosecutor can do it, can commit a Brady violation without intentionality, right? Yes. Inadvertently by not disclosing. But I would make a distinction between the Brady violation, which is the lack of disclosure, and the issue of the false testimony as opposed to the false report. Because when you look at the false evidence, including false testimony, the U.S. Supreme Court has said very clearly in Lapew, which is a case that my opposing counsel has relied on heavily, and the court has said the touchstone of Lapew is knowing. Was there a knowing use of false evidence? And you're right, it could be anyone's down the road. Well, if it's a prosecutor, he doesn't have to. It would likely be imputed to the prosecutor under Giglio, but if anybody in the prosecutorial team knew and intentionally tried to hide that, I think that could be false testimony. There's nothing in the record here. It has to be on the prosecutorial team. It can't be on the police team. Well, anybody that's acting in concert with the government or on behalf of the government. The problem I have with this case, why can't we take into account the possibility that somebody in the crime lab met that criterion? Well, there's absolutely no evidence in the record that anybody in the crime lab intentionally tried to skew the results of this trial or the results of that testing. And there's absolutely no evidence in the record that when David Posh got up, he did anything but testify in good faith. He made an error. There's no question about that. But it was an error that was made in good faith, and there is no clearly established Supreme Court precedent that says that a mistake is a Brady violation. But I guess that's right, but I'm wondering how it works exactly, because you're saying if the policeman who didn't give it to the prosecution or the crime lab assistant who didn't give it to the policeman who didn't give it to the prosecution, if those people were in good faith, there's no Brady violation. But if they give it to the prosecutor, and the prosecutor in good faith neglects to give it to opposing counsel, then the prosecutor is not protected. Is that right? So there's a difference in who gets the good faith protection for purposes of Brady? No, I think what you are talking about when you're talking about turning something over is suppression. And clearly the prosecutor, if the police have suppressed something, that is imputed to the prosecutor. We know that, and that's very clearly established. But on that Brady suppression issue, nothing was available to suppress. Nothing. The point is that's not this case. But if it were this case, and you have in Tennessee, for example, we had some bad incidents involving coroners who skewed their results intentionally in order to bring about a more favorable result for the prosecution. That was later discovered. What avenues of relief are open to a convicted person under those circumstances? I seem to remember that those cases resulted in new trials or, you know. Well, certainly I think then you fall under absolute false evidence. That evidence, for instance, that if the later investigation showed that, yes, there were people in the crime lab, we've audited the crime lab, we've investigated the Detroit crime lab, and there were, in fact, people who were trying to skew the results of this testing. It wasn't just error. They were results that were skewed. That is not anything that has ever come up. I mean, I understand that's not this case. But in those instances, probably the prosecutor would agree to a new trial. I think so. Or if it were egregious enough, the prosecutor might realize that the prosecutor couldn't go forward with the case. One way or another, some relief would come. I think that's true, Your Honor, and I think it's because then there is that element of knowing false evidence and a knowing false report that you have not. I understand that. It makes sense to me. I'm just trying to get the doctrine straight in my mind. You can help me because you deal with this a lot. If the prosecutor in good faith suppresses something, it's still suppressed. But if the police investigator suppresses something in good faith, it's not suppressed for Brady purposes, right? That seems to be where you're ending, is that the good faith standard has to be applied when you're talking about functionaries down the line, but doesn't have to be applied when you're talking about the prosecutor himself. Is that the distinction? I think you're using the word suppression. I'm only talking about not giving evidence that would help the defendant. That's all I'm talking about. Well, and in terms of suppression, you're talking about not giving evidence. There was no evidence here to give, so nothing was suppressed. Had there been evidence? You support that by saying he acted in good faith, which is a different issue from whether there was evidence. I'm making a distinction ideologically between the suppression of evidence, whether the state should have turned over divulged evidence, and then the false testimony. I'm just putting those in two different boxes because in terms of suppression, there has to be something to suppress. In terms of false evidence and the testimony of David Posh about the report, that would have to have been knowing use of false evidence, and at the time it was not. Go ahead. Let me just make clear my understanding of this. For Brady purposes, it doesn't matter whether the withholding of evidence is willfully or inadvertently, and it doesn't matter whether it's the prosecutor or the police or anybody else who are subject to the Brady requirement. I mean, if it's withheld, it's withheld, and there's just no further inquiry as to why it might have been withheld. For false evidence claims, as distinct for Brady claims, it matters whether or not the testimony was knowingly false, and it matters both with respect to the prosecutor and with respect to the witness who gave the testimony. But it's possible the prosecutor might not have known, but the witness did know, and in that case, same relief as if the prosecutor knew. Absolutely. You said that much better than I did, Your Honor, and that is exactly the case. There is a little bit of a distinction between suppression under Brady and the false evidence which requires a knowing evidence. I would also say that— I suggest you move on to answering Judge Seiler's question if we've covered that. Well, one of your positions is that it's harmless error anyway. Yes. This is not a situation where they had ballistics and had the weapon to match it up. We don't have a weapon here, and it doesn't make a difference whether the shooter shot five times or 15 times, I guess. Absolutely. Instead of having them all match up with the same gun, if there were two guns. This was not—the heart of this case was not the number of shooters, and it wasn't the number of shots. It was the identity of the shooter. We have an eyewitness who clearly he knew Kennedy, and he identified him. He said he's hanging out of a red Jeep with an AK-47, and he's shooting continuous shots. We have two other people at the scene who couldn't identify the shooter but identified a red Jeep and shots coming from the passenger side. Can I ask one question about this? Mr. Humphrey also identified the person who killed—I think Heath was the— who killed him as being Butch, which was apparently a reference to Kennedy. Presumably, there was an opportunity for cross-examination of Humphrey, and presumably he could have been asked, whether he was or not, if he actually saw Kennedy shoot Heath or merely presumed that Kennedy shot Heath because he saw—he's the one he saw shooting. Are you talking about a cross-examination of Humphrey? Yes, ma'am. Because Humphrey said very clearly, I saw him in the passenger side, hanging out of the passenger side. No, no. It was Kennedy. What I'm asking you is, did he see one of those shots hit Heath, or did he merely presume one of them did? And he didn't say, I saw one actually go in. And the trial testimony does not elucidate that. Right, not that I recall. But, you know, the test for harmless error is whether admission of those, that unreliable ballistics, for example, had a substantial or injurious effect on the influence in determining the jury's verdict. And it wouldn't have. With all these other witnesses, with the eyewitness testimony, and the fact that key to this case was an alibi, I wasn't there. Not self-defense, I was shooting at someone else. And, again, even if there had been a second shooter, it would not have made a difference centrally to this case. No prejudice, no harmless error. Thank you, Your Honors. Ms. Sutton, your two-minute rebuttal. The reason that the Detroit Crime Lab was audited in 2008 was due to over a 10% error rate in the ballistics section. Now, the police did hold this evidence in their possession at the time of the original trial, and they could have properly tested the evidence and then provided the evidence to the prosecution, who would have, in fulfillment of their Brady obligations, turned it over to the defense. But that can happen at any time, right? I mean, you could say, well, they need to go back and check it again, on fingerprints and all sorts of things, right? And our point, well, before the trial, it was presented as the evidence has presented. You know, you're playing some semantical games here. I mean, it is true that the analysis of the crime scene existed at the time of trial, but the ballistics report that supports your view here was not generated until years later. That's correct. It was not. But criminal trials are conducted with clear rules. Defendants are entitled to an attorney with access to the evidence, a right to place trust in the evidence presented by the state, and to cross-examine and confront witnesses, and to fashion a defense based on incriminating testimony that is truthful and trustworthy. Now, these rules are constitutionally mandated, and we believe when the state fails to adhere to these rules, the outcome of the criminal process is constitutionally flawed. Mr. Kennedy's attorney was denied these tools by state action, and the systemic failure which led to the submission of faults and material evidence in Mr. Kennedy's trial, we believe constituted an extreme malfunction of the Michigan criminal justice system, and habeas relief should be granted. Thank you. We appreciate very much the argument both of you have given, and we'll consider the case carefully. And with that, the clerk may adjourn.